## Springfield City Ry. Co. v. William Clark, John Ritter and John Foster.

1. COMPARATIVE NEGLIGENCE—*Ordinary Care.*—The rule of comparative negligence can not be invoked by a plaintiff unless he establishes affirmatively that he himself was in the exercise of ordinary care.

2. ORDINARY CARE—*The Term Defined.*—Ordinary care is such

care as a reasonably prudent person adopts for the security of his person or property to avoid injury.

**Memorandum.**—Action of case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. Jesse J. Phillips, Judge, presiding. Heard in this court at the May term, A. D. 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

Conkling & Grout, attorneys for appellant.

Patton & Hamilton and James M. Graham, attorneys for appellees.

Mr. Justice Pleasants delivered the opinion of the Court.

These were actions on the case for injuries to persons and property, respectively, resulting from a collision between a car of appellant and a carriage of which appellee Clark was driver and Foster the owner, and in which Ritter was riding as a passenger.

The accident occurred about half past ten o'clock in the night of January 19, 1892, at the crossing of Edwards and Spring streets in said city. The car was going north on Spring and the carriage west on Edwards.

By stipulation of counsel they were tried together and only one bill of exceptions was prepared.

Upon the general issue the jury found for the plaintiffs and assessed the damages of Clark at $800, of Ritter at $400 and of Foster at $300. Motions for a new trial in each were overruled and judgments entered on the verdicts, respectively.

The errors assigned and argued are that these verdictss were against the law and the evidence, that the damages assessed were excessive, and that the court erred in giving and refusing instructions.

It was a cold and clear but moonless night. Snow had fallen during the day and had thawed, but the rails were icy, a condition which made them very unreliable with refer-

ence to stopping or slowing the car. The wheels, though not turning, would slide. As to the rate of speed at which it was going, the testimony conflicted, ranging from seven to eighteen or twenty miles per hour.

On the south side of Edwards street, some twelve or fifteen feet from the corner of Spring, there was a watering trough where a team was standing, to avoid which the carriage was turned north and was crossing Spring in a northwesterly direction. The driver's back was therefore toward the south, from whence the car was coming. At the southwest corner of the crossing was a building nearly one hundred feet long on Edwards street which obstructed the view of Spring street, south, until it was passed. The driver stated that there was no car north, to which he looked, that he heard no signal of any coming from the south before he passed the corner, and that he looked as soon as he could, but did not see it. Spring street is only sixty-six feet in width, and the car track, four feet eight and a half inches wide, is in the middle of it, making the east rail but a little over thirty feet west of the east line of Edwards, on which he was driving. He had, therefore, hardly passed the corner so as to be able to see south, before his horses were at the track. They were going at the rate of five or six miles per hour. He says he first observed the car when it was from seventy-five to one hundred feet south of him when his horses were on or at the rail and he was unable to back; that he thereupon hallooed to the motorneer to stop or slow up his car, but no attention being paid to it he whipped up his horses in hope of getting across before it could reach him. There was no one inside the car but the conductor, who was then attending to the stove. Clark and Ritter testified that the motorneer was not looking forward along the track but standing sideways, toward the west, and batting his hands as if to keep them warm, and that immediately upon Clark's hallooing he turned his back to the front and looked into the car. It struck the hind wheel of the carriage throwing it twenty feet or more against a telephone post, and ran on at least one hundred and fifty feet before it was stopped.

From the evidence in the record we are not prepared to say the jury over-estimated the damages to the carriage or to its driver or the passenger.

Both the conductor and motorneer testified that the bell was sounded for Edwards street, but the driver and passenger, who were listening for it, and two others of the six witnesses who observed the collision, say they did not hear it.

Thus the evidence upon the question of care or negligence on the part of the motorneer and that of the driver, upon whom the rights of the plaintiffs respectively depend, was conflicting, as is usual in such cases.

It must be conceded there was a failure to use ordinary care by one or both of these men. Such a collision could hardly have occurred upon any other supposition; considering the time and kind of night, the condition of the rails, the narrowness of the street and the obstruction of the view south from Edwards street by the long house on the corner, it might well be doubted whether an ordinarily careful motorneer would approach such a corner at an unusually high rate of speed, without notice by some sound signal, looking in another direction and without having in hand the means provided for regulating the movement of his car, but giving attention only to his own personal comfort. There was evidence tending to prove that such was the case with this motorneer on that occasion.

So also it might well be doubted whether an ordinarily careful carriage driver would drive west, on Edwards, upon the track, without availing himself of the earliest opportunity, after passing the obstruction to his view by the long house, to look south for a coming car. There was some circumstantial evidence tending to prove that Clark did so on this occasion. That is the only fault charged to him, unless he did see the car in time to stop his carriage and so avoid the collision, but recklessly undertook to cross ahead of it. He positively denied that he saw the car in time to avoid it, and as to that was not contradicted, even circumstantially. If he failed to look, which he also denied, the question would arise whether such failure was explained and measurably

excused far enough to relieve him from the charge of failing to use ordinary care, by reliance upon the absence of the signal for which he listened, if he did listen and it was not given, the diversion of his course by the team at the trough, and proper attention to his horses, then going north of west. This, with the other controverted questions of fact, was for the jury.

It was their province to find the facts from the evidence and also to determine whether those facts were or were not, as to each of the parties, consistent with the exercise of ordinary care; and unless there was error on the part of the court materially contributing to it their finding should be conclusive. Five instructions were given for the plaintiff. The first three in relation to negligence and care on each side, and the remaining two upon the measure and elements of damages. Each of the former is complained of.

It is said that in the first the court attempted to state the rule of comparative negligence, but omitted the requirement of ordinary care on the part of the plaintiff, which is true as far as it goes; however, it is repeated in the second given for defendant, with this addition: "Yet if they further believe from the evidence that the driver, Clark, was guilty of negligence which contributed to the collision, then the plaintiff can not recover unless the jury believe from the evidence that the negligence of the defendant was gross and that of the driver, Clark, was slight in comparison with that of the defendant; and if the jury believe from the evidence that Clark was not in the exercise of ordinary care and caution in approaching and crossing the track, then he was guilty of negligence which was not slight and plaintiff can not recover." There is no necessary inconsistency in these instructions. The addition to defendant's defines slight negligence, used in plaintiff's, as being greater than is con-sistent with the exercise of ordinary care, and makes the exercise of at least such care on the part of the driver essential to the right of plaintiff to recover. Each of the two others given for plaintiff also plainly require that degree of care to entitle him to a verdict. The third for defendant

strongly announces the same requirement and furnishes a definition of ordinary care; and the first is to the same effect, without the definition.    Taken together, these instructions state the rule of law so fully and clearly that the jury could not have been misled by the omission from plaintiff's first. They do not present a case of contradictory instructions in which the jury might as well follow the one as the other. Willard v. Swanson, 126 Ill. 381.

The second and third given for plaintiff are objected to as tending to confine the attention of the jury to the conduct of the driver at the moment of collision, without reference to the question of care or negligence in his conduct preceding it.    This objection is founded, as to the second, on the phrase, " You should take into consideration the situation and conduct of both parties at the time of the alleged injuries."    In support of it some cases are cited in which the Supreme and Appellate Courts have disapproved of instructions they thought to have this tendency.    I. C. R. R. Co. v. Waldon, 52 Ill. 294; C., B. & Q. R. R. Co. v. Sykes, 1 App. 527; C. & N. W. R. R. Co. v. Clark, 2 Id. 122; C., B. & Q. R. R. Co. v. Colwell, 3 Id. 549.    The instructions in question in these cases were more open to criticism on this ground than the one here under consideration, and yet as to some of them we should be disposed to say with the Supreme Court in L. S. & M. S. Ry. Co. v. Johnson, 135 Ill. 652–3, " it was hypercriticism," and to put a somewhat higher esti- mate upon the intelligence of juries.    The institution would be hardly worth preserving, if in any such body of twelve men there should not be found some of sufficient sense and influence to prevent such a misconstruction.    We have not the slightest doubt that in this case the jurors as well as the counsel discussed and considered the conduct of the driver in approaching the point of collision.    It will be observed that the instruction requires their consideration of the situation and conduct of both parties at the time of the alleged injuries.    If they were limited to the *punctum temporis* the instant of collision, as to the driver, they were so also as to the motorneer, and such a limitation would have been quite

as favorable to defendant as to plaintiff and absurd as to both. But there was no such understanding. If the instruction, considered by itself, could have caused it, the possibility was removed by those given for defendant, the second and third of which required due care by Clark " in approaching and crossing" the track. L. S. & M. S. R. R. Co. v. Johnson, *supra*.

This objection, as to the third of plaintiff's instructions, rests upon what seems to us a misapprehension.

That instruction was as follows: "It is the duty of the defendant by its agent or servants to use reasonable care to see vehicles which may be passing across its tracks; and if you believe from the evidence that the motorneer of the defendant did not use ordinary care to observe Clark while he was passing across the track of the defendant upon a public street, and that if said motorneer had used such ordinary care, he could have seen the carriage in time to have stopped his car or slackened its speed so as to have avoided injury to said carriage and Clark and Ritter, and that the plaintiff, while using ordinary care, was injured as charged in the declaration on account of such neglect, the jury must find a verdict for the plaintiff."

The third count of the declaration in Clark's case alleges that defendant's servant, by the exercise of ordinary care, could and should have seen the carriage, and stopped or slackened speed so as to avoid injury to the carriage crossing the track; but not regarding its duty, defendant did not see it, or stop or slacken the speed of the car, and the collision and injury resulted.

The preceding counts respectively charge defendant with negligence while plaintiff was approaching the track, namely, running the car at a dangerous rate of speed, and not ringing a bell, sounding a whistle or giving some signal or warning of its approach. But the third was directed against its negligence after he had reached it, namely, in not seeing the carriage in time, and stopping or slowing up so as to avoid the injury.

The third instruction had reference to the charge in this

count, and therefore properly directed the minds of the jurors to the time "while he was passing across the track," which is the phrase upon which the objection rests. Whatever other fault it may have, we think it not chargeable with the one here alleged.

By several instructions asked by the defendant it was declared to be the law, that if the driver, "by looking or listening" could have seen the car and avoided the collision, the plaintiff could not recover; but the court modified them by substitution for the words quoted the phrase "by the exercise of ordinary care;" and this modification of them is urged as error. Citations are made from Booth on the Law of Street Railways (p. 432, Sec. 315), and a number of decisions by the Supreme Court of Pennsylvania, in support of this contention, and it is earnestly argued that the new conditions consequent upon the introduction of cable and electric cars for street railways in the cities and larger towns require the application of this rule.

The question has not before arisen for decision in this State. We are not prepared to adopt it in advance of a decision by the Supreme Court or some act of the legislature, against the oft repeated holdings that negligence is a question of fact, except where some positive duty imposed by statute has been disregarded or the act or omission in question is such that universal and instant judgment would unhesitatingly pronounce it negligence. If it admits of honest difference of opinion it must be submitted to the jury.

Some other points are urged in the argument for appellant which we deem unnecessary to notice.

On the whole, we think there is no substantial ground for complaint of the action of the court or of the finding of the jury and the judgments in the several cases respectively will therefore be affirmed.