CITIZENS' RAPID TRANSIT CO. v. SEIGRIST.

(*Nashville.* · January 30, 1896.)

1. ELECTRIC STREET RAILROADS. *Rights and duties at grade cross-ings.*

An electric street railroad has no superior right of way over ve-
hicles at grade crossings upon the streets or other public high-
ways. The rights and duties of each are equal at such cross-
ings. Each must exercise its right with due regard to the
right of the other, and in such careful manner as not unreason-
ably to abridge or interfere with the right of the other. Each
must look and listen for the other, and take due precaution
not to inflict or incur injury by collision. (*Post, pp. 120–124.*)

Cases cited and approved: Memphis, etc., Ry. Co. *v.* Logue, 13
Lea, 34; 25 L. R. A., 508–9 and note.

2. SAME. *Same. Negligence of street railroad.*

An electric street railroad company is liable for injury resulting
to the owner or driver of a vehicle from a collision with one of
its cars at a grade crossing upon a public street or highway,
caused by the motorman's failure to regulate and control the
speed of the car, on approaching the crossing, in such manner
as to be able to prevent accidents. (*Post, pp. 124–127.*)

Cases cited and approved: 53 Minn., 551; 47 Mo. App., 65; 53 Hun,
571; 68 Hun, 369; 99 Mo., 400; 129 N. Y., 125.

3. SAME. *Same. Driver of vehicle not negligent.*

Contributory negligence is not imputable to the driver of a ve-
hicle that collides with an electric street car, running at a
reckless rate of speed, at a grade crossing upon a public street
or highway, where he, from a point only ten yards from the
crossing, looked for the car and saw it approaching rapidly
some 200 to 250 yards away, and, believing that he had sufficient
time to cross the track in safety, proceeded to do so without
again looking, assuming that the car would approach the cross-
ing in a lawful manner. (*Post, pp. 125–127.*)

Cases cited and approved: 52 N. W. R., 902; 22 N. E. R., 1063: 55
N. W. R., 742.

4. SAME. *Same. Degree of care required at crossings.*

The degree of care required of persons crossing street railroads at grade crossings of streets or other public highways, is not so great as that required of persons at like crossings of steam or commercial railroads. (*Post, p. 126.*)

Cases cited and approved: 52 N. W. R., 902; 22 N. E. R., 1063.

5. SUPREME COURT. *Will not reverse verdict upon the facts, when.*

If the strongest legitimate view or construction of the evidence that can be taken against the complaining party will support the verdict, this Court will not reverse upon the facts. (*Post, pp. 124, 125.*)

Case cited and approved: Kirkpatrick *v.* Jenkins, *ante*, p. 85.

---

### FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

STEGER, WASHINGTON & JACKSON and P. D. MADDIN for Transit Co.

LEMUEL R. CAMPBELL and J. S. PILCHER for Seigrist.

CALDWELL, J. Solomon Seigrist brought this suit against the Citizens' Rapid Transit Company to recover damages for personal injuries, which he averred it wrongfully and negligently inflicted upon him. The trial, before Court and jury, resulted in verdict and judgment in favor of the plaintiff for

$650, and the defendant, after motion for a new trial had been overruled, appealed in error.

The Citizens' Rapid Transit Company was a regularly chartered street car company, operating electric street cars upon Cedar Street, in the city of Nashville, and upon the Charlotte Pike to West Nashville, by one continuous line. Both Cedar Street and the Charlotte Pike were public highways, properly in constant use by the general public, as well as by the street car company.

Solomon Seigrist, the plaintiff below, was a baker, residing in West Nashville and furnishing bread daily from his covered wagon to his customers in Nashville.

The injuries complained of in this case were caused by a severe collision, in which one of the street car company's outgoing cars ran against and overturned his wagon while he, as driver, returning to his home, was passing across the company's track at a regular and well-known crossing on the Charlotte Pike. That the injuries were thus inflicted, and that they were of a serious nature, is not disputed; but the company, through its counsel, contends that the collision was the result of such negligence on the part of Seigrist as to bar his action, and, therefore, that there is no evidence to support the verdict.

What were the relative and respective legal rights and duties of the two parties at the particular time and place? Undoubtedly, they both had the legal

right to use that part of the public highway upon which the collision occurred; but, since they could not use it at the same moment of time, it was the duty of each to so use it as not to injure the other, or unreasonably impede the other's use. The right of neither was superior to that of the other; the duty of neither was more exacting than that of the other. Their rights and their duties were equal. Both were bound to exercise reasonable care and diligence to prevent a collision, and each was allowed to assume that the other would do so, and to act accordingly. It was the duty of Seigrist to look and listen, and to have his horse under reasonable control as he approached the crossing; and so it was the duty of the motorman to survey the highway ahead of him, and to have his car under reasonable control as he approached the crossing. Neither one, reaching the place first, would have been under any obligation to stop and wait for the other to approach and pass, but either, in that situation, would have been authorized to proceed on his way, assuming that the other, being in reasonable control of his vehicle, and otherwise in the exercise of ordinary care, as he should be, would not collide with him; and no mistake that he might have made in that rightful assumption could be charged to him as negligence, unless the lack of such control and care on the part of the other person was apparent to him at the time. Neither party, in such case, could excuse himself for

going into obvious danger if he knew it was impending.

In his late work on Street Railways, at Section 304, Booth says: "As already stated, as a general rule, especially between street crossings, cars have a right of way superior to that of other vehicles and pedestrians, this preferential right to be exercised in a reasonable and prudent manner. But this rule does not apply to crossings of tracks at street intersections. Here the car has a right to cross, and must cross, the street; and vehicles and foot passengers have a right to cross, and must cross, the railroad track. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and in such a careful manner as not unreasonably to abridge or interfere with the right of the other. This equality of right, however, does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accidents."

Another short statement of the law as to injuries at street crossings is as follows: "It is generally held that street railroads have no superior right of way over vehicles at street crossings, and the company will be liable for negligence of its employees in failing to have the car under control at such place, thereby causing injury to persons with vehicles; and the question of negligence and contributory negligence is for the jury. This has been

held in regard to electric cars. *Watson* v. *Minneapolis Street Railroad Co.*, 53 Minn., 551; *Hickman* v. *Union Depot Railroad Co.*, 47 Mo. App., 65; *Buhrens* v. *Dry Dock, E. B. & B. R. R. Co.*, 53 Hun, 571; *Bernhard* v. *Rochester Railroad Co.*, 68 Hun, 369. And the same has been held in regard to cable car companies. *Pope* v. *Kansas City Cable Railroad Co.*, 99 Mo., 400. And the same was held with regard to horse car companies. *O'Neil* v. *Dry Dock, E. B. & B. R. R. Co.*, 129 N. Y., 125." *Hicks* v. *Citizens' Railroad Co.*, 25 L. R. A., 508–9, note.

In our own case of *Memphis City Railway Co.* v. *Logue* it was said that "the public have an equal right with the company to travel on the streets, and therefore the company must, in using its franchise, exercise such care and caution for the purpose of avoiding accidents and endangering property and persons as a reasonable prudence will suggest." 13 Lea, 34.

Authorities to the same general effect might be greatly multiplied, but it is hardly necessary that it should be done.

The verdict of a jury in a civil case will not be disturbed in this Court, if there is any evidence to sustain it. *Kirkpatrick* v. *Jenkins*, *ante*, p. 85, and cases there cited. And, in order to impeach it successfully on the ground that there is no evidence to sustain it, the complaining party must take as true the strongest legitimate view of the testi-

mony against him, and show that it affords no sup-
port for the finding of the jury.

That is the burden that the street car company
has assumed in this case; and, with that require-
ment in view, we will now examine some of the
testimony found in this record in the light of the
rules heretofore laid down in this opinion with re-
spect to the relative and respective rights and duties
of the two parties at the time and place of the ac-
cident.

Seigrist said on the stand that, when he "had
gotten about ten yards from the crossing," and be-
fore attempting to pass over the street railway track,
he "looked back to see if the car was coming;"
that he "saw it coming some distance up the hill,"
seemingly "200 or 250 yards behind" him, and
thought he "had plenty of time to cross the track
in front of the car;" that "the car was moving
fast," and he "was driving about four miles an
hour;" that "as soon as" he looked back, when
ten yards from the crossing, he "started to drive"
his horse across the track, and did not look back
again until the front wheels of his wagon were upon
the track, and he "heard the car coming very fast,"
and that, before he could get entirely across the
track, the car, which "was flying," struck the rear
part of the wagon, on the side, with great force,
throwing the vehicle from the track, upsetting it,
breaking the hind wheels and other parts, and inflict-
ing serious and permanent injuries upon his person.

This testimony was sufficient to justify the jury in finding that Seigrist had observed the requisite precautions to prevent an accident, and that he was free from culpability in the matter. Though it was his duty to look and listen as he approached the crossing, it was not incumbent on him to stop before going upon the track, when it seemed to him, upon reasonable ground, that he could pass over in safety.

The law does not require so great an amount of carefulness of a person in crossing a street railway as in crossing a steam or commercial railway, for the obvious reason that his right is greater and his danger less in the former than in the latter case. To entitle him to recover for injuries received while passing over a street railway, he need not "show absolutely that he looked carefully up and down the track before venturing upon it." Beach on Cont. Neg. (2d Ed.), Sec. 290; *Shea* v. *St. Paul City Ry. Co.*, 52 N. W. R., 902; *McClain* v. *Brooklyn City Ry. Co.*, 22 N. E. R., 1063.

It was not negligence *per se* for Seigrist to go upon the track without looking a second time for the approaching car. When only ten yards from the crossing, he saw the car, and thought it was two hundred or two hundred and fifty yards away. With that belief, and the rightful assumption that the motorman saw him, and had his car under reasonable control, as he could and should have done, Seigrist, having reached the crossing first, had the

right to continue his journey, and cross the track without let or hindrance. Having had that legal right, and having attempted to exercise it in a prudent manner, he can, in no true sense, be charged with responsibility for the consequence of his mistaken assumption that the motorman would likewise be prudent, and not run upon him. *Watson* v. *Minneapolis Street Railroad Co.*; 53 Minn., 551 (S. C., 55 N. W. R., 742).

On the other hand, the evidence is clear that the motorman was guilty of negligence, proximately causing the injuries complained of, in that he, knowing of the public crossing, and seeing Seigrist near by and approaching it, did not have his car under reasonable control, but was running at such a high rate of speed that he could not, or, at least, did not, stop in time to prevent a collision. *Watson* v. *Minneapolis Street Railroad Co.*, *supra; Hickman* v. *Union Depot Railroad Co.*, 47 Mo. App., 65; *Buhrens* v. *Dry Dock*, etc., 53 Hun, 571; *Bernhard* v. *Rochester Railroad Co.*, 68 Hun, 369; *Pope* v. *Kansas City Cable Railroad Co.*, 99 Mo., 400; *O'Neil* v. *Dry Dock*, etc., 129 N. Y., 125.

Affirmed.