WILSON *v.* CITIZENS' STREET RY. CO.

*(Jackson.* June 14, 1900.)

1. VERDICT. *Not set aside on the facts.*

The Court cannot find, upon the facts set out in the opinion, that there is no evidence to support the verdict in favor of the defendant company denying plaintiff damages for injuries sustained by a collision, at a road crossing, of defendant's car with plaintiff's wagon. *'(Post, pp. 75–79.)*

2. STREET RAILWAYS. *Duty of motorman at crossings.*

It is the duty of a motorman in charge of an electric car to keep his car well under control on nearing a road or street crossing. He has no right to assume that persons approaching the crossing will take care to avoid a collision. and, finding the crossing clear, to run up to and over it at a rate of speed so immoderate that he could not, if necessary, avoid collisions. *(Post, pp. 79–81.)*

3. SAME. *Duty to look and listen at crossings defined.*

Ordinarily the failure of a person to look and listen when about to cross an electric car line constitutes negligence that will defeat his action for damages for an injury resulting from a collision, but this rule is not absolute and universal. It should be left to the jury to determine, upon consideration of all the facts and circumstances, whether plaintiff was guilty of contributory negligence in failing to look and listen, when it appears that he was not familiar with the crossing and the collision occurred in darkness, and that he was laboring under mistake as to locality of crossing. *(Post, pp. 81–85.)*

Cases cited: Railroad *v.* Patton, 89 Tenn., 378; Railroad *v.* Dies, 98 Tenn., 655.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

GANTT & PATTERSON and JERRE HORNE for Wilson.

TURLEY & WRIGHT for Railway Company.

McALISTER, J. This is a suit to recover damages for personal injuries, alleged to have been sustained in consequence of the negligence of the defendant company in the operation of its cars. The case was tried by the Court and jury, resulting in a verdict for the defendant. The plaintiff appealed and has assigned errors. The first assignment is that there was no material evidence to support the verdict, and that upon the undisputed evidence there is liability.

The accident occurred on the night of August 21, 1898, at the intersection of the Macon Road and Grace Avenue, about five miles· from the city of Memphis. The street car tracks are on Grace Avenue, running north and south, and crossing the Macon Road at right angles. There is a heavy grade on Grace Avenue, beginning at a point seven hundred and fifty feet north of the Macon Road and descending to the point of intersection with said road. At and near their intersection both roads are in a cut, estimated to be between three and five feet high. There is proof tending to show that any one seated in an ordinary wagon, such as plaintiff was driving, and surrounded as he was, could see a car coming from the north to the south on defendant's track for a distance of

seven hundred and fifty feet. The railroad track crosses the Macon Road practically at a level, and it is said that the rails are flush with the road. It appears that the plaintiff lived about twenty-five miles from Memphis; that he came to the city on Saturday with a wagon load of chickens, and started home on Sunday night between eight and nine o'clock. The plaintiff was driving a one-horse wagon, going from the west toward the east on the Macon Road, and as he was attempting to cross Grace Avenue, the front wheels of his wagon were struck by an electric car, throwing the plaintiff out, and the wheels of the car passed over one leg, crushing it and rendering amputation necessary. Plaintiff claimed that at the time of the accident he was driving very slowly—that the horse was, in fact, walking; that he had not been over this road exceeding four or five times, and did not know of the exact location of the car line; that the night was dark, and there were no houses or lights to apprise him of the crossing. Plaintiff further testified that his first intimation of the proximity of the track was the loud ringing of the gong on the car; that he immediately turned his head and saw the car approaching at a high rate of speed, and probably not more than twenty-five feet away. It was then too late to escape, and the accident followed. The motorman reversed his car before the collision, but could not stop it before the car and

the trailer attached to it had cleared the crossing, and the rear end of the trailer stood about forty-five feet from the crossing.

It is agreed by all the witnesses that the car descended the hill very rapidly, some testifying that it was running from eight to ten miles an hour, while others place the speed at ten or twelve miles an hour. The motorman testified that he was coming down grade, with his car under control, and ringing his gong for the crossing; that when he was within fifty feet of the crossing, and seeing no passengers there, he loosened his brake and let the car roll on down; that when within twelve feet of the road he saw a horse approaching the crossing; that he immediately sounded his gong rapidly; that the plaintiff paid no attention to the gong; that he then hallooed at him; that, seeing he made no effort to stop, he reversed the car twice, and made every effort to stop, but struck the horse's head with the dashboard of the car. The motorman further tesified that he did not reverse until within about six feet of the point of collision; that he considered he had the right of way, and when he rang his bell people would not get on the track.

The following question was asked the motorman on cross-examination: "And you didn't reverse until you got within six feet of where you say the horse was going to stop on the track?"

Answer: "When I saw he was not going to

make any effort to stop; I supposed that a man driving along there would see, and naturally give me the right of way—a man with an eight-wheeled car and a trailer, and seventy-five passengers, going down a grade like that."

Again he was asked, viz.: "Well, you thought he would give you the right of way as you came down the hill, after you rang the bell?" and he answered: "Yes, naturally I supposed he would give the right of way."

The insistence of plaintiff's counsel is that the proximate cause of the accident was the immoderate rate of speed at which the motorman was approaching the crossing, and his unwarranted assumption that plaintiff would keep out of the way, and that the company had the right of way.

The theory of the defendant is that plaintiff drove on the track, without looking or listening, immediately in front of the car, in such close proximity as to render it impossible for the motorman to stop the car in time to prevent the accident. Plaintiff admits that, while he did not know the exact locality of the railroad track, that he had traveled over the road four or five times prior to the accident, and knew that the track was somewhere in that neighborhood. Plaintiff admits that he did not look either to the east or west when he reached the railroad track, and did not know he had reached the track until he heard the gong ring, which was after he had gotten on

the track. The uncontradicted proof is that the car was lighted on the inside, and that it carried a good and sufficient headlight.

The motorman testified that he was running down the grade at the rate of about six miles an hour, and that he was on the front of the car, looking for passengers at the crossing.

The motorman further testified that while the embankment would prevent the headlight on the car from illuminating the Macon Road, that it did not prevent a person driving on the Macon Road from seeing the car, since the car was lighted up.

There is also testimony tending to show that the motorman slackened his speed as he approached the crossing, and that at the time of the accident the car was running about six miles an hour. The motorman also testified that the rear end of the trailer passed the crossing only about five feet when the car was stopped, while there is other proof to the effect that the car ran two car lengths, or forty feet.

We cannot say, upon the foregoing statement of the case, there is no evidence to support the verdict, and the first assignment of error is, therefore, overruled.

The next assignment is that the Court erred in delivering the following instruction to the jury, to wit:

"It was the duty of the motorman, Studevant,

in approaching the street car crossing on the Macon Road, to have his car under reasonable control, and to be on the lookout ahead, and to see whatever an ordinarily careful, prudent motorman would see as to persons, animals, or vehicles, upon the crossing of the Macon Road, or near enough to the track to be struck by the car in passing.

"If no one was in the range of his vision, or if no one was near enough to and approaching the crossing to make the danger of collision probable, he had the right to proceed on his way across the Macon Road, and to assume that if any one was approaching the crossing, they would have their vehicle under proper control and would exercise ordinary care to avoid a collision. And no mistake that Studevant made in regard to these two rightful assumptions, as to how Wilson, or any one else, would act in approaching the railroad crossing, could be charged to him as negligence."

The Court ignored in this instruction the question of speed at which the car was traveling. The motorman himself testified that when he was within fifty feet of this crossing, seeing the crossing was clear, he loosened his brake, and thereby increased the speed of his car. He further testified that he saw the plaintiff driving towards the crossing at a distance of fifteen feet. It was, therefore, an erroneous instruction to charge the

jury, upon these uncontradicted facts, that the motorman had a right to proceed on his way across the Macon Road, and to assume that if any one was approaching the crossing he would have his vehicle under proper control, and would exercise ordinary care to avoid a collision. The charge should have been qualified so as to read, "unless the motorman was traveling at an immoderate rate of speed, in view of the proximity of the crossing, and had thereby disabled himself to control the car when the danger of a collision became imminent."

The third assignment is, the Court erred in refusing the following special instruction, viz.:

"If you find from the evidence that the plaintiff did not know he was approaching, and about to cross, a street car track, and by the exercise of reasonable and ordinary care he would not have known it, then it is for you to say whether the plaintiff was keeping such a lookout for vehicles or cars that might endanger his safety, and was otherwise in the exercise of such care as a man of ordinary prudence would have exercised under the same facts and circumstances. If he was, he cannot be charged with negligence."

Again, on this subject the Court was asked to charge, viz.:

"The Court charges you that, no matter how negligent the defendant might have been, if you find from the evidence that the plaintiff was

21 p—6

guilty of negligence contributing directly to the bringing about of the injury, he cannot recover. In looking to the question whether the plaintiff was guilty of contributory negligence, you are to determine from the evidence what kind of a horse plaintiff was driving; the speed at which he was driving; his familiarity, or lack of familiarity, with the location of the tracks of the defendant; what, if any, lookout he was keeping for the car, or other vehicles that might endanger his safety; the nature and character of the crossing; the time of night or day; the difficulty, if any, of seeing; and every other fact and circumstance bearing upon the case, and to say, upon your fair and impartial judgments, whether he acted as a reasonable and prudent man should have acted. If you find that the plaintiff did act as a reasonable, prudent man, under the facts and circumstances of this case, and you further find that the defendant was negligent in the way in which it ran and operated its car, then your verdict should be for the plaintiff."

These supplemental instructions were asked in view of the fact that the Court had, in its general charge, emphasized the statement that it was the absolute duty of the plaintiff, before going upon the railroad track, to look and listen. The Court charged "that when the evidence establishes the fact that Wilson did not look or listen for a coming car, and if he had done so he could

have seen the car in time to stop, etc., he cannot recover." Again, the Court said, viz.:

"What would an ordinarily careful, prudent person do, who was driving a horse and wagon along a road at night, approaching and about to cross a railroad track? The law says what he must do. He must look and listen for an approaching car," etc. Again, the Court said, viz.:

"It was the duty of plaintiff, Wilson, on approaching the street car crossing on Macon Road, to look and listen for an approaching car," etc.

The criticism of learned counsel upon this charge is that the duty to look and listen is not an absolute, cast-iron rule of law, which must be applied to all cases, without limitation or exception. The proof shows that plaintiff lived twenty-five miles from the place of the accident; that he had not driven over the road exceeding four or five times; that the night was dark; that there were no houses or lights to warn him of the proximity of the track; that the two roads, at their intersection, were in a cut from three to five feet high; that the railroad track was flush, or level, with the road. The plaintiff had testified that at the time he drove upon the track he was under the impression that the track was located some distance further east, and that in view of his ignorance of his surroundings and the darkness of the night, he was driving very slowly.

We think, under these facts and circumstances,

the Court was in error in charging that the law imposed on plaintiff an absolute duty to look and listen, and in not leaving it to the jury to say, in view of the proof, whether plaintiff was guilty of contributory negligence in failing to look and listen. The law on this subject is well settled. *Railroad Co.* v. *Patton,* 5 Pickle, 378; *Railroad Co.* v. *Dies,* 14 Pickle, 655; *Railroad Co.* v. *Ives,* 144 U. S., 430; *Railroad Co.* v. *Farrow,* 66 Fed. Rep., 501; 2 Wood's Railway Law, 328; *McGhee* v. *White,* 66 Fed. Rep., 504; *Railroad* v. *Jones,* 95 Fed. Rep., 370; *Continental Co.* v. *Stead,* 95 U. S., 161.

As said by this Court, in *Railroad Co.* v. *Dies,* supra, viz.: "The duty of a person about to cross a railroad track to stop, look, and listen is not absolute and universal. This requirement must receive a reasonable construction, and failure to observe it does not always constitute negligence."

Mr. Wood says: "Where a person is ignorant of the location of a crossing, or where the circumstances are such as to mislead him as to the necessity for looking or listening for the approach of the train, he cannot, as a matter of law, be said to be guilty of negligence, *per se,* for neglecting to do so." 2d Wood on Railway Law, p. 1328.

The fifth Pickle case, that of *Patton* v. *Railroad,* is especially apposite. That was a case where Patton stepped out of the way to allow an ap-

proaching train to pass. After it had passed, he stepped upon the track, without looking and listening, walking in the direction that the passing train had taken. He did not look back from time to time to see whether a train was coming. He was run down and killed by a detached portion of the train which had passed.

Judge Lurton, who delivered the opinion in the case, said: "The peculiar circumstances under which this intestate went upon the track, and the fact stated to account for his failure to observe this train—that he was crossing a bridge under which there was a waterfall, the noise of which probably prevented him from hearing—alone prevents the negligence of the deceased from barring any recovery whatever."

He further says: "The case stated in the declaration makes an exceptional one, and one which should go to the jury."

He quotes from Wood on Railway Law, wherein he says that there are exceptions to the rule of look and listen.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.