## TENNESSEE ELECTRIC POWER CO. v. JAMES HUNTER.

Eastern Section. ——— —, ——.

Petition for Certiorari denied by Supreme Court, October 18, 1930.

2

Brown & Spurlock, for plaintiff in error.

Sam J. McAllester, Harry R. Hays, and Clarence Kolwyck, all of Chattanooga, for defendant in error.

SNODGRASS, J. On the —— day of ————, 19—, a street car operated by the plaintiff in error came into collision with a motorcycle ridden and being operated by the defendant in error at the intersection of Jackson avenue with Roanoke street in the city of Chattanooga when defendant in error was knocked unconscious, recovering consciousness in Newells Sanitarium. He remained in the hospital one week and was disabled from work six weeks. He suffered an injury to his head, a bruise and sprain to his shoulder and knee cap wrenched, etc. There is no complaint that the judgment is excessive provided there is a liability which was controverted in a plea of not guilty and certain special pleas which were traversed.

The cause was heard before the Judge and jury when there was a verdict and judgment for the plaintiff below in the sum of $1,000. After its motion for a new trial was overruled the defendant below perfected an appeal to this court and has made the following assignments of error.

I.

"The court erred in overruling defendant's motion for new trial and in declining to direct the jury to return a verdict for the defendant the motion to so direct the jury having made at the conclusion of the plaintiff's testimony and renewed at the conclusion of all the testimony."

II.

"The court erred in charging the jury as follows: 'Now, Gentlemen of the jury, it is the insistence of the plaintiff that he approached the crossing of this street car track with his motorcycle under control; that as he approached the street car track that he observed the street car coming some 50 feet away; that he approached the track at an approximate rate of speed of eight or ten miles an hour, thinking that he had time to get across the track, and undertook to do so. Now, if you find from the proof that the street car was approaching this street crossing with due care and that the plaintiff thought he could get across in safety and under-

took to do so and the collision occurred, that the plaintiff made a miscalculation, then he is responsible, that is if you believe that the street car approached the crossing with due and proper care.' "

We do not think under the facts of this case that there was any error in the court's refusal to direct the jury to return a verdict in favor of defendant as insisted in the first assignment of error.

Although an alleged ordinance regulating the speed and manner of motorcycles at public crossings and street intersections was plead specially as a defense to the action, there was no proof establishing such ordinance and so far as either the street car or the motorcycle was concerned, this passage was governed by the principles of the common law which puts them upon the measure of equality.

Quite a number saw the accident and from different distances and angles and there is no real dispute as to the material facts upon which liability must stand or fail.

There was a house which obstructed the vision of the street car conductor going South on Roanoke and also the vision of the motorcycle rider going East on Jackson avenue, and as people were liable to pass at any time going East on Jackson avenue both being public streets of a city, it was the duty of the street car operator to keep a vigilant lookout for such a contingency and have his car so under control that if suddenly one who had earned the right of passage should come within the range of his vision this prior right might be yielded and the car stopped or so checked as to facilitate it.

In this case these rights and obligations were mutual and the question of who first reached the crossing with an apparent purpose of occupying it is material to be considered.

In the case of Street Railway v. Hudson, 7 Higgins, 147, it is said: "manifestly and beyond question at street crossings the rights of the parties are equal. The street railway company has no superior right to pedestrians or other occupants of the highway at street crossings."

In Citizens Rapid Transit Company v. Seigrist, 96 Tenn., 119-126, it was held that: "The law does not require so great an amount of carefulness of a person in crossing a street railway as in crossing a steam or commercial railway, for the obvious reason that his right is greater and his danger less in the former than in the latter case. To entitle him to recover for injuries received while passing over a street railway he need not show absolutely that he looked carefully upon and down the track before venturing upon it."

Supporting this statement authorities were cited, and the case continued: "It was not negligence per se for Seigrist to go upon the track without looking a second time for the approaching car. When only ten yards from the crossing, he saw the car and thought it was two hundred or two hundred and fifty yards away. With that belief, and the rightful assumption that the motorman saw him

and had his car under reasonable control, as he could and should have done, Seigrist, having reached the crossing first, had the right to continue his journey, and cross the track without let or hindrance. Having had the legal right, and having attempted to exercise it in a prudent manner, he can, in no true sense be charged with responsibility for the consequence of his mistaken assumption that the motorman would likewise be prudent and not run upon him.

"On the other hand the evidence is clear that the motorman was guilty of negligence, proximately causing the injuries complained of, in that he, knowing of the public crossing, and seeing Seigrist near by and approaching it, did not have his car under reasonable control but was running at such a high rate of speed, that he could not, or at least did not, stop in time to prevent a collision."

This case is in every essential particular about on a par with the case at bar. The difference being that when the motorman passed beyond the obstruction of the house to his left, he was then upon the intersection and about ten feet from the tracks; and had earned his right to passage because at this time he testified that the street car was fifty or sixty feet away and running 25 or 30 miles an hour, while he was going about 8 or ten. The motorman testified that he was running about 50 or 20 miles an hour. He also testified that running 15 miles an hour it could be stopped in 45 or 50 feet. If 20 miles an hour it would go four or five feet further; but did not say within what distance it might be stopped, at 25 or 30 miles an hour, if at the same ratio it would have gone fifty or 55 running at 25 miles and 55 or 60 feet if running at 30 miles an hour.

If therefore the car was fifty feet away when the motorman should have seen plaintiff appropriating his right to enter upon the crossing and had applied the brakes even then, the car would have been brought to a stop before striking him or have passed only a few feet farther and when it is perceived how the brakes would have checked the speed of the car even before it stopped and when it is remembered, that, according to the testimony of defendant in error notwithstanding the brakes were not applied or the speed of the car checked before striking him, defendant in error was about to clear the last rail when he was struck, it can be seen that had his calculations not miscarried in the particular that the motorman was in the proper exercise of his duties and would observe his obligations in that regard he would have passed in safety. This consideration we think locates the blame for this accident for it is not negligence to rely upon what the law says he has a right to assume even though its futility is made manifest in the results. The foregoing principles are further made manifest from a consideration of the authorities already cited and from the case of Jackson Railroad Company v. Barnett, 1 Higgins, 572, where it was

said: "If the traveler reaches the crossing first and indicates a purpose to use the crossing, it is the duty of the motorman to check or stop his car and let the traveler pass. On the other hand, if the traveler sees, or would in the exercise of ordinary care have seen, that a street car was about to reach the crossing, and is about to appropriate the crossing space and is in the act of passing, it is his duty to refrain from an attempt to use the crossing at that time."

"Where Driver of Vehicle has reached Crossing—

"It is the duty of a motorman upon approaching a crossing and discovering that the driver of a vehicle has reached the crossing and is in the act of using it, to reverse his car and do all in his power to prevent collision. Under the circumstances indicated the party in the vehicle has the right to cross, and it is the duty of the motorman who so finds him at the crossing about to use it, to check his car and respect the right."

"An electric street railroad has no superior right of way over vehicles at grade crossings upon the streets of a city, the rights of each being equal at such crossings and each must exercise his right with due regard to the right of the other, and in such manner as not to unduly or unreasonably abridge or interfere with the rights of the other. Vehicles may and the street car ought each to listen and be on the lookout for the other, and to use due care to avoid collision."

We think therefore that the jury were authorized to say that under the guaranties of the law, the defendant in error was not proximately negligent in entering upon the crossing and that the proximate cause of the accident was the failure to keep a lookout and the car under such proper control as to prevent this accident after the defendant in error had earned his right to passage. At least if there was any proximate negligence at all upon his part it was for the jury to determine.

We think in the extract quoted in the second assignment of error that the court said as much to the jury regarding a non-liability as he would have been authorized to say if not more, for it is manifest if plaintiff below came upon the crossing within a few feet of the track with the street car fifty feet away and if he had the right to rely upon the rights of his earned status that the motorman would check his car so as to yield the passage which would be due and proper care, we do not see how the court would have been authorized to say as he was virtually asked to do in the extract covered by the third assignment of error, that the manner of the approach of the car was immaterial; that, notwithstanding the plaintiff below had a right to anticipate that he would not be run down when there was time to have checked the car; and permitted

6

his safe passage, he could not recover if the plaintiff in error failed to cooperate as he should have done, that is to say if stopping would have been the act of a "prudent" man. Without regard to the omission of the word "ordinarily" which should have preceded the word "prudent" in the extract, we do not think the court can be put in error in refusing this particular request. Believing that there is no reversible error manifested by the assignments they are all overruled and the judgment of the court below affirmed with costs adjudged against plaintiff in error and its securities.

Portrum and Thompson, JJ., concur.