TENNESSEE ELECTRIC POWER CO v. BAINBRIDGE et al.—
95 S. W. (2d) 1261.

Middle Section.    February 21, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Aust, McGugin & Spears, of Nashville, for plaintiff in error Power Co.

Bailey & Davies and Baxter Cato, all of Nashville, for defendants in error administrators.

CROWNOVER, J. This was an action for damages instituted by the administrators for the wrongful death of their intestate, John W. Bainbridge, who was run over and killed by a street car owned by the defendant company.

The declaration averred that the plaintiffs' intestate was crossing a street intersection at a point designated for passengers to board the street car, on the Gallatin road at the intersection of Chesterfield avenue; that he had waited until the street car was within reasonable distance, moving slowly, and then started to walk across the track in front of it; that defendant's motorman was not keeping a lookout ahead and keeping his car under control, and deceased was run over on account of this negligence of the motorman; that after running over him the motorman backed his car and ran over him again.

The defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the conclusion of the testimony the defendant moved the court for peremptory instructions in its favor, which motion was overruled. The jury returned a verdict of $5,000 in favor of the plaintiffs and against the defendant.

Motion for a new trial having been overruled, defendant appealed in error to this court and has assigned errors which raise only two questions:

(1) Was the defendant power company guilty of any negligence?

(2) Was the deceased guilty of negligence which proximately contributed to his injuries and death?

This accident happened on Thanksgiving Day, November 29, 1934, at about 10 o'clock in the morning, on a switch track, or passing track, of the Tennessee Electric Power Company, at the intersection of Gallatin road and Chesterfield avenue.

The Tennessee Electric Power Company's right of way and track along the Gallatin road are east of, and adjacent to, Gallatin road. Gallatin road at this point is north and south. Chesterfield avenue is east and west and enters Gallatin road on its east side. The track is a single track most of the way down Gallatin road, but at this point there is a double track, consisting of the main track and a passing track between two switching points, to allow outgoing and ingoing cars to pass each other. The north switch is 150 feet from the northeast corner of Chesterfield avenue. The length of the whole passing track is 377 feet. The outbound car stops there on the main track and waits for the inbound car to pass.

Chesterfield avenue is 50 feet wide. The right of way of the power company is 35 feet wide. Gallatin road is 24 feet wide. The tracks are each 4 feet 8 inches from rail to rail. The space between the inside rail of one track and the inside rail of the other is 4 feet 8 inches. The street car extends out beyond the rail 16 inches.

The cars operated on this track are large cars 41 feet 2 inches long.

Their maximum speed is 22 miles an hour. Half speed is 10 miles an hour. From the front of the car to the front wheels is 8 or 9 feet.

At the southeastern corner of Chesterfield avenue is a stop sign on the overhead wire, which wire extends from a post on the corner across Gallatin road, indicating that the inbound car will stop at that point for passengers. The car only stops there when there are people waiting to become passengers. The outbound car waits on the main track, or east track, and the inbound car travels on the switch track, or west track.

On account of the fact that Gallatin road has a great deal of traffic, it has been customary for some time for people who wish to board the street car going south to Nashville to wait on the east side of the tracks and cross the two tracks to the west side as the street car approaches, as the place where they board the car is at the edge of the road.

John W. Bainbridge, aged sixty-three years, a salesman in a clothing store in Nashville, lived on Chesterfield avenue and traveled on this car line every day to and from Nashville. On this morning he left his home and came to the intersection of Gallatin road and Chesterfield avenue, at about 10 o'clock, to become a passenger on the street car going to Nashville. On the north side of Chesterfield avenue, near the track, he met a negro man, named John Gray, that he had known for a long time, and stopped to talk to him. They were standing about 4 feet east of the main track. The outbound car was standing on the main track, awaiting the passing of the inbound car, which was due. The front of the outbound car was about 10 feet south of the southeast corner of Chesterfield.

While talking, Bainbridge looked up the track and saw the inbound car approaching and said to Gray that his car was coming which he must board for the city. As the car entered the switch, Bainbridge and Gray walked across Chesterfield to a point in line with the stop sign, and when the car was about 30 feet away Bainbridge started across the tracks in front of the standing car on the east track and the approaching car on the west track.

The car was moving slowly. Some witnesses testified that it was barely moving when the collision occurred and did not slow up until the car struck him.

There was nothing to prevent the motorman from seeing Bainbridge crossing the tracks, and there was nothing to keep Bainbridge from seeing the street car.

Just as Bainbridge reached the west rail of the west track, he paused an instant, as an automobile was passing on Gallatin road on the east side, and was struck by the street car and knocked down. The car came to a full stop within 8 or 10 feet after striking him. Bainbridge was lying at the edge of the Gallatin road, the front

right wheel had run over his right leg, which was between the two wheels, and the front wheel was partially on his left leg. The motorman backed the car to release him, thus running over his right leg again.

His right leg was crushed; his left, fractured; and his right arm broken. It was necessary to amputate his right leg; he died several days later.

The power company contends that its motorman was not negligent and that Bainbridge was guilty of negligence that proximately contributed to his injury.

1. Their first insistence is that the motorman had reason to think that Bainbridge did not intend to become a passenger on his car, and as there was nobody else waiting for the car he was not preparing to come to a full stop at this stopping point.

Collins, the motorman, testified that when he went out on the line he saw Bainbridge standing at the intersection of Chesterfield avenue, east of the tracks, near the stop sign, talking to a negro; that a car went in to the city while his car was standing on the outbound track, which car Bainbridge could have taken if he had intended to go to the city, but he did not do so, but continued to talk to the negro; that when his car returned about fifteen minutes later Bainbridge was still talking to the same negro, which caused him (the motorman) to think that he did not intend to become a passenger on the inbound car; that there were no other passengers at the stopping place, so he (the motorman) did not intend to stop at this point; that when the street car was within a short distance of the stopping point Bainbridge suddenly turned and started across the tracks; that he applied the emergency brake and rang the bell, but Bainbridge was struck before he could bring the car to a standstill.

This testimony about Bainbridge's standing by the track talking when the car went out is contradicted by the negro, John Gray. Gray testified that about 15 or 20 minutes before the accident he met Bainbridge on Chesterfield avenue going east toward his home and stopped and talked to him; that the next time he saw him he met him at the car line and stopped, stood there, and talked to him until this car came.

There is also conflicting testimony about whether Bainbridge suddenly appeared on the track, and the rate of speed at which the street car was traveling.

Only two witnesses saw the street car and Bainbridge, both, and observed their relative positions, at the time that Bainbridge started across the tracks; they were Collins, the motorman, and Gray, the negro.

Collins' testimony as to how far the street car was from the stop sign when Bainbridge started across the tracks is of no value because

contradictory. He first stated that he had gotten a car and a half (60 feet) beyond the switch, which would have made the car 140 feet away; then he says he was 40 or 45 feet off; and then 25 or 30 feet. Finally he said that he didn't know how far away he was.

John Gray, the negro, testified that he stepped the distance from the point where Bainbridge started across the tracks to the point where the street car was when Bainbridge started, and it was 60 feet. He became confused on his cross-examination, but he explained it on redirect examination by saying that he had not measured it when he stated to defendant's attorney before the trial that it was 30 feet. However, it is impossible to tell from his whole testimony whether the distance was 30 feet or 60 feet. But the defendant apparently attempted to show by Gray that it was 30 feet.

Joe McCrary testified that the car was 25 or 30 feet away when Bainbridge was in the middle of the first or outbound track.

There is considerable conflict in the testimony as to the rate of speed at which the street car was traveling after it passed the switch. Collins, the motorman, says he came into the switch traveling 5 or 6 miles an hour, but when he first saw Bainbridge crossing the tracks he was then running at the rate of 12 to 15 miles an hour, although Bainbridge and the negro were in plain view standing at the crossing.

Hershel Roth and W. W. Allen say the car was moving very slowly; J. H. McDonald says it was barely moving.

The evidence shows that Bainbridge was 4 or 5 feet east of the first track when he started; that he traveled that distance, the width of the first track, the space between the tracks, and the width of the second track, which makes a distance of about 18 feet, before he was struck. If the car was 30 feet away, as contended by defendant, then traveling at the rate of 12 or 15 miles an hour it would have passed the stop sign before Bainbridge could have reached the west track if he traveled at the rate of 4 miles an hour. While Bainbridge was traveling about 13 feet (the distance to the west track), at 4 miles an hour the car could have run 30 feet and have passed on.

If the car was barely moving, as some of the witnesses say, then there was no reason why the motorman could not have stopped it in 30 feet when he saw Bainbridge coming across the tracks under the stop sign.

Evidently the jury believed that the motorman was not keeping a lookout ahead; that if he had seen Bainbridge sooner and checked his speed sooner, Bainbridge in a second more would have stepped from the west rail to safety, or the street car might have stopped 2 or 3 feet sooner and not have run over him.

The motorman, evidently, was not keeping a lookout ahead as is required by law.

■ Furthermore, this street car was crossing a street intersection,

and approaching a station for passengers, and a man was coming toward the car under the stop sign. It was the motorman's duty under such circumstances to have his car under control.

"The operator of a street-car has no right to assume that no one will attempt to cross in view of a car; but must check its speed, as soon as he sees or ought to see that one is about to cross, and he must have the car well under control at street crossings." 2 Shearman & Redfield on Negligence (6 Ed.), 1286, sec. 485c.

There is conflict in the evidence about whether the bell was rung and when the motorman first sounded it.

■ The question of the negligence of the defendant power company was properly submitted to the jury.

2. The defendant power company contends that Bainbridge, after he started across the tracks, did not look at the street car again; that he went upon the track in front of the oncoming car without looking up, which was such negligence on his part as to bar this action.

Collins says Bainbridge, after he turned and started across the tracks, never looked at the street car again.

Joe McCrary, who was a passenger on said street car, testified that when he first saw Bainbridge he was in the center of the east or outbound track; that the motorman rang the bell and applied the brakes; that the car was 20 or 30 feet from him; that Bainbridge did not check his speed and never looked up.

This accident happened on a street crossing. The rights of way of the street car and Bainbridge were equal. Gray testified that Bainbridge looked up the track, saw the car, and started across; and that he (Gray) also looked and thought Bainbridge had time to cross the track ahead of the car.

■ In view of the fact that there is conflict in the evidence about the distance of the street car when Bainbridge started across the tracks, the rate of speed of the car, whether the motorman sounded the bell, and when, and in view of the fact that the motorman was crossing a street intersection and approaching a station, it was for the jury to decide whether it was negligence for Bainbridge to fail to look again as he entered the track. Citizens' Rapid Transit Co. v. Seigrist, 96 Tenn., 119, 33 S. W., 920.

"If there is reasonable ground to believe that with the exercise of ordinary care by both parties one may safely cross in front of an approaching car, it is not negligence to attempt to do so." 2 Shearman & Redfield on Negligence (6 Ed.), 1275, sec. 485bb.

"And while, generally speaking, one who is about to cross a street railroad should both look and listen for cars, this is not an inflexible rule; nor is it to be enforced with any such strictness as in the case of an ordinary steam railroad. It is not negligence, as a matter of law, to omit so to do. The question is whether a prudent man, acting

prudently, would have thought it unnecessary to do so." 2 Shearman & Redfield on Negligence (6 Ed.), 1281-1283, sec. 485c.

It was not negligence per se for him to go upon the track without looking at the car a second time. When he had started across the tracks, under the shop sign, he thought he had time to cross. With that belief, and the rightful assumption that the motorman saw him, and had his car under reasonable control, as he could and should have done, Bainbridge, having reached the crossing first, had the right to cross the track. He cannot be charged with responsibility for the consequence of his mistaken assumption that the motorman would likewise be prudent, and not run upon him. Citizens' Rapid Transit Co. v. Seigrist, supra; Saunders v. City & Suburban Ry. Co., 99 Tenn., 130, 41 S. W., 1031; Street Railroad Co. v. Howard, 102 Tenn., 474, 483, 52 S. W., 864; Wilson v. Citizens' Street Ry. Co., 105 Tenn., 74, 58 S. W., 334; Nashville Railway Co. v. Norman, 108 Tenn., 324, 67 S. W., 479; Memphis Street Railway Co. v. Riddick, 110 Tenn., 227, 230, 75 S. W., 924; Tenn. Elec. Power Co. v. Hunter, 13 Tenn. App., 1, 5.

"As a general rule, especially, between street crossings, cars have a right of way superior to that of other vehicles and pedestrians—this preferential right to be exercised in a reasonable and prudent manner. But this rule does not apply to crossings of tracks at street intersections. There the car has a right to cross, and must cross, the street; and vehicles and foot passengers have a right to cross, and must cross, the railroad track. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and in such a careful manner as not unreasonably to abridge or interfere with the right of the other. This equality of right, however, does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accidents." Citizens' Rapid Transit Co. v. Seigrist, supra.

"It is generally held that street railroads have no superior right of way over vehicles at street crossings, and the company will be liable for negligence of its employees in failing to have the car under control at such place, thereby causing injury to persons with vehicles; and the question of negligence and contributory negligence is for the jury." Id.

"Contributory negligence is not imputable to the driver of a vehicle that collides with an electric street car, running at a reckless rate of speed, at a grade crossing upon a public street or highway, where he, from a point only ten yards from the crossing, looked for the car and saw it approaching rapidly some 200 to 250 yards away, and, believing that he had sufficient time to cross the track in safety, proceeded to do so without again looking, assuming that the car would approach the crossing in a lawful manner." Id.

■ Failure to look and listen 'before crossing the tracks of an electric railway in a public street, where the cars have not an exclusive right of way, is not negligence, as a matter of law. Robbins v. Springfield St. Ry. Co., 165 Mass., 30, 42 N. E., 334; Consolidated Traction Co. v. Scott, 58 N. J. Law, 682, 34 A., 1094, 33 L. R. A., 122, 55 Am. St. Rep., 620; Shea v. St. Paul City R. Co., 50 Minn., 395, 52 N. W., 902; Kelly v. Brooklyn Heights R. Co., 12 Misc., 568, 33 N. Y. S., 851; Springfield City R. Co. v. Clark, 51 Ill. App., 626; Hall v. Ogden City St. R. Co., 13 Utah, 243, 44 P., 1046, 57 Am. St. Rep., 726.

Whether it was negligence on Bainbridge's part, under the circumstances, was a question for the jury, and the jury evidently found that he thought that he had ample time to cross, assuming that the motorman had his car under control.

■ 3. Plaintiffs aver that they are entitled to recover for the injuries their intestate received when the motorman, after the car had rolled over Bainbridge, backed the same up and ran over him again.

Hershel Roth and W. W. Allen testified that the motorman backed the car, running over Bainbridge again. Hill, the motorman on the standing outbound car, and Collins testified that Hill moved the right leg of Bainbridge out of the way before the street car was backed. But these two witnesses fail to show how Hill managed to get his injured right leg out from between the wheels, leaving the left one fastened by the front wheel.

Dr. Ballard testified that the cause of his death was the crushing of his right leg.

Irrespective of whether Bainbridge was guilty of negligence in the first instance, the defendant company is liable for the second injury in backing up and running over his leg again, Knoxville Ry. & Light Co. v. Henson, 5 Tenn. Civ. App. (5 Higgins), 578; 2 Thompson on Negligence, sec. 1598; Missouri, etc., R. Co. v. Peay, 7 Tex. Civ. App., 400, 26 S. W., 768.

It results that all the assignments of errors are overruled and the judgment is affirmed. A judgment will be entered in this court for $5,000 and interest from April 10, 1935, to the present, in favor of the administrators and against the power company. The costs of the cause including the costs of the appeal are adjudged against the power company and the sureties on its appeal bond.

Faw, P. J., and DeWitt, J., concur.