JUDGE SIMPSON
delivered the opinion op the court:
John Christopher and Charles L. Stancliffe brought a suit in chancery, in the year 1852, against Edward Casparri, to enforce their lien, as mechanics, on a house and lot in the city of Louisville. They alleged in their petition that the defendant was indebted to them in the sum of $735 for work and labor done, and materials furnished, in constructing said building. They made William Kendrick a defendant, who, they alleged, held a mortgage on the property.
Kendrick filed an answer, in which he set up the mortgage that he held on the property; and by an amended answer, which he filed in April, 1853, he alleged that he had purchased the debt due to the plaintiffs, and was entitled to their lien also. Pie exhibited a transfer from the plaintiffs, by which he was authorized to enforce the lien for the collection of the debt, and prayed that the property might be sold to pay not only the debt which had been transferred to him by the plaintiffs, but also the debts secured by the mortgage. Casparri, the mortgagor, filed an answer, admitting that the debts were all just, and consenting that a decree might be rendered for a sale of the property as prayed for by his co-defendant. This answer was also filed in April, 1853.
In February, 1856, Casparri executed to B. Erhman and others a mortgage on the same property, to secure debts falling-due twelve months thereafter. In 1857, after the twelve months had expired, the mortgagees brought this action to foreclose the mortgage, and have the property sold for the payment of their debts. They made Kendrick, the elder mortgagee, a defendant, who set up and relied not only on his mortgage, but also on the mechanic’s lien, which had been transferred to him as before mentioned.
The question is now presented whether, under these circumstances, the mechanic’s lien is available against the persons claiming under the second mortgage. It appears that the suit brought for the enforcement of the lien was ready for hearing-in April, 1853, and that no step was taken in that suit from that time until after the present action was commenced in 1857. It does not appear that the mortgagees in the last mort *149 gage had any actual notice of the existence of the lien when their mortgage was executed, nor even when the present action was commenced. They therefore contend that as they are purchasers for a valuable consideration without notice, the lien cannot be made available against them, inasmuch as the suit which was brought for its enforcement has not been prosecuted with reasonable diligence.
The lien is created by statute, and continues one year from the completion of the work. Unless a suit for its enforcement be brought before the expiration of the year, the lien will be entirely lost. Its existence after the year has expired depends exclusively upon the pendency of the suit brought for its enforcement. If that suit should be dismissed for want of prosecution, or for any other cause, the lien would be as effectually lost and defeated as it would have been if no suit had been brought within the year. It is evident, therefore, that the lien is alone continued in force after the year has expired by the lis pendens, and the inquiry naturally arises, how long can it be thus sustained and kept in existence so as to affect prejudi-cially the rights of third persons.
The general rule is that a party who claims the benefit arising from a lis pendens must, in order to entitle himself to it against a bona fide purchaser, show that the suit has been prosecuted with reasonable diligence. (Watson vs. Wilson, 2 Dana, 406; Clarkson, &c., vs. Morgan's devisees, &e., 6 B. Mon., 447.) This principle has been adopted to guard in some degree against the mischiefs that might arise to the rights of third persons, from permitting a lien on property, latent in its character, to be continued beyond a period of time actually necessary for its enforcement.
We cannot perceive any good reason why the same doctrine should not apply in a case like the present. The same evils will result from the continuation of the lien by reason of the Us pendens, beyond a reasonable time. The pendency of the suit does not in fact impart notice of the lien to third persons, who, ignorant of its existence, and also of the name of the person who is entitled to it, might not, even upon inquiry in the clerk’s office of the court where the suit is pending, be able *150 to acquire any information on the subject. The legislature could not have intended to create a lien, that might be continued in existence indefinitely, by the mere pendency of a suit for its enforcement. An entirely different intention is manifested by the act itself. The lien has no existence after the expiration of a year from the time the work is finished, unless in the meantime a suit be brought for its enforcement. The legislative intention to require diligence in the enforcement of the lien is unmistakably indicated by the provision in the act limiting the time in which a suit for that purpose must be commenced. Public policy, therefore, as -well as the legislative intention thus evinced, requires that, so far as the rights of third persons are concerned, the lien should be enforced within a reasonable time after the suit for that purpose has been instituted.
Here the suit was permitted to remain on the docket for four years, after it had been prepared for trial, without any decree having been obtained for the enforcement of the lien, and no reason for the delay has been offered. This we deem to be such gross negligence as to deprive the party of all right to its enforcement against the persons claiming under the second mortgage. The fact that the elder mortgagee was made a party to the suit which was brought to enforce the mechanic’s lien, does not affect the principle which requires the suit to be prosecuted with due diligence. Plis being a party to the suit, did not render the object of the suit more notorious than it would have been, nor impart to it more efficacy than it would have had if the creditor and the debtor had been the only parties.
We are of opinion, therefore, that the chancellor erred in giving to this lien priority over the claim of the persons entitled to the benefit of the second mortgage.
Wherefore, the judgment is reversed, and cause remanded for a judgment in conformity with this opinion.