ROBINSON *v.* · BIERCE.

*(Jackson.* May 8, 1899.)

1. COVENANTS. *When breached.*

Covenants of seizin, and against incumbrances, are breached and action lies at once if an incumbrance exists against the land at date of the deed; but a covenant of warranty is not breached, so that action lies, until actual eviction. *(Post, pp. 431, 432.)*

Cases cited and approved: Barnett *v.* Clark, 5 Sneed, 436; Kincaid *v.* Britton, 5 Sneed, 122; Austin *v.* Richards, 7 Heis., 665; Crutcher *v.* Stump, 5 Hay., 100; Allison *v.* Allison, 1 Yer., 16; · Ferriss *v.* Harshea, M. & Y., 48; Kenney *v.* Norton, 10 Heis., 388; Austin *v.* McKinney, 5 Lea, 499; Collis *v.* Cogbill, 9 Lea, 137; Stipe *v.* Stipe, 2 Head, 168; Greenlaw *v.* Williams, 2 Lea, 533; Williams *v.* Burg, 9 Lea, 455.

2. SAME. *Burden of proof in action on.*

If a covenantee pays off an incumbrance without submitting to suit and making defense, or affording his covenantor opportunity to defend against it, the burden is upon him, in a suit to recover of the covenantor the amount thus paid, to show that the incumbrance was a valid and subsisting one at the time of payment. · *(Post, pp. 432, 433.)*

3. LIMITATIONS, STATUTE OF. *Action to save right from bar.*

An action to enforce a lien subject to statutory bar, must, in order to arrest the running of the statute of limitations and keep the lien alive, not only be brought in time, but must be prosecuted, after commencement, with such reasonable diligence as will save a *lis pendens* lien from loss by laches. *(Post, pp. 433–438.)*

Cases cited: Mann *v.* Roberts, 11 Lea, 57; Williamson *v.* Williams, 11 Lea, 355; Anderson *v.* Tolbot, 1 Heis., 407; Zook *v.* Smith, 6 Bax., 213.

4. SAME. *Tax lien lost, when.*

The lien for taxes is lost and ceases to be an incumbrance upon the property, within the meaning of the covenants of a war-

Robinson *v.* Bierce.

ranty deed conveying it, where an action to enforce the lien, brought in due time, was permitted to slumber in the Court for eleven years without the taking of a single step therein. (*Post, pp. 433-438.*)

Acts construed: Acts 1885, Ch. 24.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.  LEE THORNTON, Ch.

PIERSON & EWING for Robinson.

R. M. HEATH for Bierce.

McFARLAND, Sp. J.   On February 16, 1886, C. W. Frazier, now deceased, sold to W. W. Bierce a lot in Memphis, and executed deed to him.   On July 31, 1886, Bierce sold this lot to E. G. Robinson, complainant herein.   At the time of sale by Frazier to Bierce there were some back taxes due on this lot, and when Frazier executed his deed to Bierce he also executed to Bierce a written agreement, in which it is recited that back taxes were due upon this lot, and that by this agreement Bierce agreed to take no steps about the same, nor interfere therein, and that the payment and settlement of same was to be left entirely and solely with said C. W. Frazier, and Bierce testifies that, at the time of the sale by him to Robinson, the

latter was informed as to the arrangement between himself and Frazier in regard to the back taxes, and the original paper was turned over to him, and he was at the time fully aware that Frazier was to look after the tax matter, and take such course as he saw proper in respect thereto without interference on his (Bierce's) part, and Robinson assented to the arrangement.

In 1897, Robinson, through his agent, Avery, negotiated a sale of the lot to one Graves, but these taxes appearing on the books as unpaid, Graves refused to complete the purchase, and, therefore, a correspondence ensued between the parties about them, Robinson insisting that Bierce should pay them, and Bierce referred the matter to Mrs. Frazier, executor of C. W. Frazier.

On December 28, 1897, Bierce writes to Avery, agent of Robinson, in response to one from him saying: "We are this day writing Mrs. Frazier to have Mr. Heath consult with you immediately upon his return, and we verily believe there will be no trouble whatever in obtaining a check from Mr. Heath for whatever amount you may expend in relieving the Calhoun Street property from any tax incumbrance."

Upon receiving this letter, Avery had the taxes reduced as much as possible and paid the balance of taxes, which were State and county for the years 1873 to 1884, both inclusive, and amounting to $422.99, including interest and costs, and thereupon

filed his bill to recover the amount from Bierce. Bierce answered, claiming that these taxes were barred when paid by Robinson, and were not such an incumbrance upon the land as was covered by the warranty in his deed to Robinson.

In this deed executed by Bierce to Robinson, there were covenants of warranty and against incumbrances, but not of seizin.

There was a decree for complainant, from which defendant, Bierce, has appealed and assigned errors. The substantial question raised by the pleadings is, were these taxes, when paid by Robinson, such an incumbrance on the land as to justify Robinson in paying off same before actual eviction, and entitle him to sue his vendor.

Under the common law, where there is a covenant of seizin, this covenant is broken at once, if there be an incumbrance, and there can be an action at once for the breach. *Barnett* v. *Clark*, 5 Sneed, 436; *Kincaid* v. *Britton*, 5 Sneed, 122; *Austin* v. *Richards*, 7 Heis., 665.

If there be only covenants of warranty of title, these cannot be sued on without alleging and proving actual eviction. *Crutcher* v. *Stump*, 5 Hay., 100; *Allison* v. *Allison*, 1 Yer., 16; *Ferriss* v. *Harshea*, M. & Y., 48.

Complainants insist, however, that, under covenants against incumbrances, the authorities in Tennessee hold that a vendee may yield to a superior title or pay off an incumbrance or judgment or lien

on the land, and sue for breach of the covenants without eviction. *Kenny* v. *Norton*, 10 Heis., 388; *Austin* v. *McKinney*, 5 Lea, 499; *Callis* v. *Cogbill*, 9 Lea, 137.

In *Kenny* v. *Norton, supra*, Norton had conveyed to Hubbard, trustee, to secure a debt. The trustee sold to Kenny. Norton owed unpaid purchase money, and the land was sold, upon proper proceedings, for payment of this purchase money, and was bought in by Kenny, who then sued Norton on his covenants of title made to Hubbard, trustee. Held, that this covenant of warranty ran with the land; that purchaser could pay off incumbrance fastened upon the land, suggesting that this was stated as the rule in *Stipe* v. *Stipe*, 2 Head, 168, but not definitely settled. The Court adds: "It must, as a matter of course, be a valid, subsisting incumbrance fixed on the land, and one which the party would be compelled either to discharge or have enforced against the land, and which was paramount to his own title, and by law would override it." To the same effect is *Austin* v. *McKinney, supra*.

Judgment of eviction, without actual eviction, is conclusive where notice is given to defend. *Greenlaw* v. *Williams*, 2 Lea, 533; *Williams* v. *Burg*, 9 Lea, 455.

In *Callis* v. *Cogsbill*, 9 Lea, 137, a judgment for possession of land, recovered against the widow of warrantor, holding under warrantor, in favor of a third party, held to be such eviction as would en-

Robinson v. Bierce.

able a vendee of same land purchasing from war-
rantor to recover purchase money.    But it is main-
tained, in such case, that the party who surrenders
possession without actual eviction does so at his peril,
and, in a suit against the warrantor, the burden of
proof lies upon the plaintiff to show the paramount
title.

The burden, then, being · upon the plaintiff here
to show this paramount title, the question is, Has the
complainant done so?    The complainant has assumed
this burden, and has shown that the lot was as-
sessed to one Parker for taxes 1873 and 1874, and
to · C. W. Frazier for the other years; that two tax
bills were filed for the recovery of these taxes, and
those tax bills, and the proceedings thereunder, are
made parts of the record.    There are several defects
pointed out by defendant in these two proceedings,
which are not necessary, however, to be noticed.

The facts important to be noticed are that Fra-
zier is made a party to the first bill, and the com-
plainant, Robinson, to the second.    In the first case
a *pro confesso* was taken against Frazier on August
19, 1887, and no further steps were taken as to
him.    He died in July, 1897, and in the second
proceeding service of process was had on Robinson
on April 14, 1890, and no further steps taken in
this case.    With these two tax suits in this condi-
tion, Robinson voluntarily paid off these taxes Jan-
uary 13, 1898, nearly eleven years after the last
step taken in the second suit.    Under the Act of

18 P—28

1885, Ch. 24, all taxes are barred by limitation, unless suit is brought within six years from the first of January of the year on which taxes accrued. All of these taxes were barred, then, unless the bar is saved by the institution of the several suits therefor above mentioned. The institution of these suits preserved the lien of these taxes after bar operated, not as originally imposed, but by virtue of the institution of the suits themselves, and converted the statutory lien into one of *lis pendens*, and must be regarded as such at the time of the payment of these taxes, and the question then becomes one of *lis pendens*.

The contention of complainant is that by the very terms of the Act of 1885 itself, the institution of the suit for taxes, and nothing more, suspends the running of the statute, and an ingenious argument to this effect is based upon the word "instituted," in the Act, citing *Collins* v. *Insurance Co.*, 7 Pickle, 432. That case only decides that the filing of a bill in equity is the beginning or institution of a suit, and does not affect this question. The construction of this statute contended for by learned counsel for complainant is too narrow. The "institution" of a suit for taxes, properly begun against the proper parties, does stop the running of the statute. But, from its institution, that suit is subject to all the rules of practice and the results of laches or subsequent incidents, as any other suit, and if in this case there was such laches in its

prosecution as lost to the State, county, or city the lien it acquired upon this property by the institution of its tax bill, or, to put it differently, if the State, county, or city having instituted its tax suits so as once to suspend the statute of limitations, failed to prosecute such suit so as to preserve this suspension, it lost by laches the benefits obtained by bringing the suit. This is the effect of laches in the prosecution of any suit.

This complainant, in his bill, states that when he bought this property from Bierce he had no knowledge of the existence of any back taxes thereon which were an incumbrance on the property, and, consequently, did not know of the existence of any tax suits. He was, therefore, an innocent purchaser with respect to this *lis pendens* of this tax suit.

In the case of *Mann* v. *Roberts*, 11 Lea, 57, failure to prosecute a suit for nearly four years was held to be such laches as lost the lien of *lis pendens* as against an innocent or *bona fide* purchaser of the land.

In *Williamson* v. *Williams*, 11 Lea, 355, the same principle was held, the Court saying: "The doctrine of many cases operates harshly upon innocent purchasers, and can only be sustained on grounds of public policy, where the private mischief must yield to public convenience (see John. Ch., 576). This being so, whenever the case is within this rule it must be enforced, but should not be extended beyond its settled requirements and well-de-

fined conditions. The true grounds upon which the Courts should decide whether there has or has not been such a prosecution of any given suit as to preserve or destroy the continuity of the *lis pendens*, is by the application of the established principles of estoppel. The law imposes the duty upon the plaintiff or complainant to prosecute with proper diligence. The public have a right to expect it. If there is a failure to prosecute, the Courts have a right to treat the negligence as intentional and misleading to the public. If the degree of this negligence has been so great as to have induced the public to believe that the prosecution of the suit has been abandoned, they should then hold the plaintiff or complainant estopped from claiming to the contrary." 13 Am. & Eng., 891.

No fixed or arbitrary rule can be formulated by which to define laches, nor definite time fixed without which steps shall be taken in a given suit, or the same brought to conclusion. To have the benefit of *lis pendens*, however, there should be a close and continuous prosecution of the suit from its commencement to its close, taking into consideration the character of the case, the obstacles thrown in the way by the opposing litigant, and the usual law's delay. *Hayden* v. *Bucklin*, 9 Paige, 512.

A delay of seventeen months in one case, and of three years in another, has been held sufficient to deprive the creditor of a priority of lien by levy.

*Owens* v. *Patterson*, 6 B. Mon., 489; *Deposit Bank* v. *Berry*, 2 Bush, 236.

This Court has held that the lien of a levy on land of Justice's execution may be lost, as against an intermediate innocent purchaser, by failure to file the papers in the Circuit Court for condemnation in a reasonable time. *Anderson* v. *Tolbot*, 1 Heis., 407; *York* v. *Smith*, 6 Bax., 213.

The lien of an attachment on land has been held to be lost by a delay of two years in the prosecution of the suit (*Petree* v. *Bell*, 2 Bush., 58), and of a mechanic's lien where there was a delay of four years. *Ehrmon* v. *Kendrick*, 1 Met., 146. These cases are all quoted with approval in the case of *Mann* v. *Roberts*, 11 Lea, 57.

It is true that laches in prosecution of a given suit may be explained, and, thus explained, *lis pendens* may be preserved for a great number of years, but that does not help the complainant in this cause. The rule as laid down in *Callis* v. *Cogbill*, *supra*, is that when the grantee in possession surrenders possession before eviction, or suffers eviction *pro tanto* by paying off an incumbrance, he must be prepared to justify such surrender by clearly making out the facts authorizing his acts. Here the complainant seeks to justify his payment of this incumbrance by showing pendency of these suits, and, in order to do this, ·exhibits records which disclose the gross laches in this prosecution, while he does not attempt to explain the effect of the laches.

It is again insisted that these were tax suits, and they should be treated with great leniency because they involve a great number of tracts of land and a great number of parties, and that the delay is generally to the advantage of the defendants, and gives them time to raise the money to pay off the taxes. We know of no rule of sovereignty or divinity which hedges a tax suit with immunity from the rules of equity and practice which control other suits. The very facts stated by complainant, of number of parties and tracts of land involved, tend to obscure particular lots and names of individual owners, and render more secret the liens placed upon particular lots, and bring these cases clearly within the rule which requires more active diligence in the prosecution of suits which fix secret liens, in order that hurt may not fall to innocent parties.

Our conclusion is that the complainant has not shown that, at the date he paid the taxes sued for, they constituted such an incumbrance upon the lot bought by him, and justified him in paying them off before even a decree adjudging them to be a lien upon this lot.

The decree of the Chancellor is reversed, and bill dismissed at cost of complainant.