H. P. IJAMS, Executor v. KNOXVILLE POWER & LIGHT CO.

Eastern Section.   October 31, 1925.

Certiorari denied by Supreme Court March 6, 1926.

1. Trial. Instructions. Instruction on contributory negligence held good.
   In an action to recover for death caused by defendant's street car striking deceased's automobile an instruction which told the jury that if they should find defendant guilty of negligence and should further find that deceased drove on the tracks without looking or failed to drive around the center of the intersection of the streets and should further find that either one or both of said acts was the proximate cause of the collision then plaintiff's suit would fail, held to properly instruct the jury on contributory negligence.

2. Negligence. Violation of a municipal ordinance is negligence, per se.
   In an action to recover for death caused by a collision of defendant's street car with deceased's automobile, the violation of a municipal ordinance, held negligence per se and would bar a recovery if it was the proximate cause of the collision.

**3. Trial.    Instructions.    Instruction on exercise of reasonable care helu good.**

In an action to recover for death caused by a collision of defendant's street car with deceased's automobile an instruction which told the jury that if deceased could have seen the approaching street car by the exercise of reasonable care, and could have seen that it was some distance away and coming at a rapid rate of speed, it would be an act of negligence for the deceased to attempt to cross the tracks in front of the approaching street car, held not so indefinite as to mislead jury and justify reversing the case.

**4. Words and phrases.    "Some distance" held to mean a short distance.**

In an action to recover for death caused by collision of street car with automobile the words "some distance" as used in an instruction, held to mean a "short distance."

**5. Trial.    Instructions.    Instruction that deceased had a right to assume street car was being operated at a lawful speed not warranted unless there is evidence deceased saw street car.**

In an action to recover for death caused by collision of street car with automobile of deceased when there was no evidence that deceased saw the street car it is not error to refuse an instruction telling the jury that deceased had a right to assume street car was being operated at a lawful rate of speed.

Appeal in Error from Circuit Court, Knox County; Hon. A. B. Neil, Judge, Sitting by Interchange.

Affirmed.

Smith, Word and Anderson, of Knoxville, for H. P. Ijams, Exc.

Cate, Smith, Tate & Long of Knoxville, for Knoxville Power & Light Co.

THOMPSON, J.    This is an action for damages on account of the death of Dr. H. A. Ijams who was killed between 10:00 and 10:30 P. M. on March 7, 1923, in a collision between a street car and an automobile he was driving, at or near the intersection of Magnolia Avenue and Lawson Street, Knoxville, Tennessee. · The jury found a verdict in favor of the defendant and, his motion for a new trial having been overruled, the plaintiff has appealed to this court and assigned error.

Magnolia Avenue, in the city of Knoxville, is a paved street about sixty feet wide running east and west and having in its center two street car tracks.    That part of the street upon which the tracks are situated is paved with concrete.    From the outside rails of the car tracks to the curb-lines of the street is about twenty-two and one-half feet wide and these spaces are paved with asphalt.

Lawson Street is unpaved and rather rough.    It enters Magnolia Avenue at right angles from the south, but does not cross and extend beyond it on the north.    Extending both eastwardly and westwardly from Lawson Street, Magnolia Avenue is uphill or up-grade, the street intersection being in a "dip."    The first street which intersects with Magnolia Avenue east of Lawson Street is Sumner and it is 800 feet east of Lawson Street.    The next street east of Sumner Street is Elmwood Street, and the next is Castle Street.

Elmwood Street is 800 feet east of Sumner Street and Castle Street is 800 feet east of Elmwood Street. Going west from Castle Street all the way to Lawson Street, Magnolia Avenue is down hill or down grade. However, the grade is mild.

Between 10:00 and 10:30 o'clock on the evening of March 7, 1923, Mr. H. A. Ijams was driving his Buick Roadster north on Lawson Street and turning west onto Magnolia Avenue, the turn, of course, being to his left. His car was a "left hand drive" and he was, of course, sitting on the left side of his roadster while driving. Mr. William Caldwell was in the car with Dr. Ijams and was sitting on the right side of the seat of the car. As Lawson Street was rought, Dr. Ijams as he approached Magnolia Avenue, was in the center of the street and had his car in second or intermediate gear. In, turning west onto Magnolia Avenue, Dr. Ijams did not pass around and to the right of the point of intersection of the two streets but "cut the corner." He crossed the first or south car track and drove the front part of his car onto the first or south rail of the second or north car track his car being headed in a northwestardly direction and crossing the rail at an angle of perhaps forty-five degrees. As he drove diagonally onto this north car track his automobile was from five to twenty-five feet up Magnolia Avenue west of the west curb-line (extended) of Lawson Street. His car was still running in second gear and was making about ten or twelve miles per hour.

The street car was going west on Magnolia Avenue on the north car track and the left front corner of the street car came in contack with the right side of Dr. Ijams' automobile, the point of collision being from five to twenty-five feet west of the west curb-line (extended) of Lawson Street. The automobile hung onto, or became fastened to, the left front corner of the street car and was pushed westwardly up Magnolia Avenue, according to a majority of the witnesses, about three hundred feet from or west of the street intersection before the street car was brought to a stop. Dr. Ijams was thrown out of the automobile at a point from fifty to one hundred fifty feet west of Lawson Street, and Mr. Caldwell was thrown out between the point where Dr. Ijams was thrown out and the point, three hundred feet west of Lawson Street, where the street car with the automobile still fastened to it was finally brought to a stop. Dr. Ijams was killed almost instantly.

The street car was not being driven for the purpose of carrying passengers. It had been out of repair with motor trouble and was being driven by one of the defendant's mechanics for the purpose of testing it.

The house at the southeast corner of the two streets sat back about twenty-five feet south of Magnolia Avenue and about fifty or sixty

feet east of Lawson Street, and a person approaching Magnolia Avenue along Lawson Street from the South, as Dr. Ijams was doing, could begin to see further and further eastwardly up Magnolia Avenue as he approached it, and at the intersection of the two streets he could see up Magnolia Avenue eastwardly at least as far as Sumner Street which is eight hundred feet east of Lawson Street. When within one hundred feet of Magnolia Avenue, a person going north on Lawson Street could see a distance of one hundred feet east on Magnolia Avenue, and this range of vision eastwardly along Magnolia Avenue, as stated, increased as the person drew nearer to Magnolia Avenue.

There was a great deal of evidences introduced by plaintiff to the effect that the street car was being operated down the hill and across Lawson Street at a rate of speed of thirty-five miles per hour or faster, whereas the city ordinance which was pleaded and proven, limited the speed of street cars to only such rate as would enable the defendant to maintain a schedule from terminal to terminal of twelve miles per hour. There was also evidence introduced in behalf of the plaintiff tending to show that the motorman operating the street car was not upon a proper lookout ahead, as he approached Lawson Street, did not have his car under reasonable and proper control and did not ring his bell or sound a warning of his approach, as required by the city ordinances which were alleged and proven, and the motorman himself testified that he did not ring his bell or sound a warning until his car was within four feet of Lawson Street and that he did not see the automobile until it and the street car were within four feet of each other. The contention was also made by plaintiff that the street car did not have a proper headlight burning, but we do not think the evidence maintained this contention.

Upon the whole there was abundant evidence supporting plaintiff's contention that the motorman was guilty of negligence, although the defendant introduced evidence in contradiction of plaintiff's contention, and the main question or defense in the case was that of the contributory negligence of the plaintiff.

In support of the contention that Dr. Ijams was guilty of contributory negligence, certain ordinances of the city of Knoxville were proven. These ordinances provided in substance that the driver of an automobile, before turning, shall make sure that such movement can be executed in safety, and shall give plain visible signal to others upon the streets by extending the hand or otherwise; that in turning into another street to the left the driver shall pass to the right of and beyond the center of the street intersection; that all automobiles shall be provided with sufficient horns, etc., and shall be driven in a careful manner and with due regard for

the safety and convenience of pedestrians and all other vehicles; and that in turning corners the speed of the automobile shall not be greater than ten miles per hour.

It was admitted that Dr. Ijams did not pass to the right of and beyond the center of the street intersection in turning from Lawson Street onto Magnolia Avenue and there is no doubt that he did not see the street car until the moment of the accident. His companion, Mr. Caldwell, says that as they approached Magnolia Avenue, he (Caldwell) did not see the street car, and in fact that he did not see it until it was within four feet of the automobile. He says that he was sitting somewhat facing Dr. Ijams and had his back rather toward the east or direction from which the street car came. Also that he was depending wholly upon Dr. Ijams to do the looking and driving and was not himself watching for street cars or other vehicles. Mr. Caldwell did not claim that Dr. Ijams looked eastwardly up Magnolia Avenue and in fact he did not, and could not, know whether or not Dr. Ijams looked in that direction, as he (Caldwell) was not paying any attention to what Dr. Ijmas was looking at the time.

There were no other street cars, automobiles or other vehicles at or near the scene of the accident.

Before taking up the assignments of error, we think it proper to state that in our opinion the case should be governed by the rules of law defining the respective rights and duties of the parties at street intersections, and not by the rules of law defining the respective rights and duties of the parties between street intersections, i. e. in the middle of blocks. It is true the witnesses say the point of contact was from five to twenty-five feet west of the west curb line (extended) of Lawson Street, but Dr. Ijams was, generally speaking, still in the act of turning from Lawson Street, into Magnolia Avenue and had just crossed the street intersection in plain view of the motorman.

The first assignment of error is that there is no evidence to support the verdict of the jury against the plaintiff. This assignment has not been pressed upon us either in the brief or in the oral argument, and as it is manifestly not well taken, it is overruled.

The second assignment of error is to the action of the court in charging the jury as follows:

"I further charge you if you should believe from the evidence that the motorman was guilty of negligence in driving at an excessive speed, in failing to sound his bell as he approached Lawson Street, yet, if you believe from the preponderance of the evidence that the deceased, Dr. Ijams, drove upon the street car tracks without exercising reasonable care to observe approaching street cars and if he failed to drive around the center of the intersection of

Lawson & Magnolia Streets, and his said acts, either one or both, was the proximate cause of the collision or contributed to it as the proximate cause, then the plaintiff's suit would fail and you should find in favor of the defendant company and this should be your verdict if the preponderance of all the evidence shows that his said acts, one or the other, or both combined, with the negligent acts of Green, the motorman, if any, was the proximate cause of said collision.''

It is argued in support of this assignment that in the above-quoted charge the court committed error in telling the jury that if Dr. Ijams drove upon the street car track without exercising reasonable care to observe approaching street cars, and that if Dr. Ijams failed to drive around and to the right of the center of the street intersection, he was guilty of negligence which barred a recovery. The argument is that whether or not these two acts were negligent and barred a recovery depended entirely upon the circumstances surrounding Dr. Ijams' approach to the street intersection, and said acts might or might not be negligent according to those circumstances, and that therefore, it was error for the court to tell the jury without qualification that the two acts constituted negligence and barred a recovery.

We do not think the charge is open to this objection because the court told the jury that either one or both of the two acts would bar a recovery only in the event they proximately contributed to the accident and injuries. The court told the jury that if Dr. Ijams drove upon the track without exercising reasonable care to observe approaching street cars and that if this was the proximate cause of the collision or contributed to it as the proximate cause, then the plaintiff was not entitled to recover. Although a person approaching and attempting to cross a street car track is not held to as strict a duty to look for approaching cars as is a person approaching and attempting to cross a railroad track, nevertheless this was a correct statement of the law. Street Ry. Co. v. Howard, 102 Tenn., 438; Wilson v. Street Ry. Co., 105 Tenn., 74; Street Ry. Co. v. Norman, 108 Tenn., 324; Street Ry. Co. v. Riddick, 110 Tenn., 230.

The court also told the jury that if Dr. Ijams failed to drive around and to the right of the center of the street intersection, as required by the city ordinance, and that if this was the proximate cause, then the plaintiff was not entitled to recover. This also was a correct statement of the law because the violation of a municipal ordinance is negligence per se in this State. Street Ry. Co. v. Haynes, 112 Tenn., 718; Chattanooga Station Co. v. Harper, 138 Tenn., 583; Chattanooga Ry. & L. Co. v. Bettis, 139 Tenn., 336.

The jury in determining whether either one or the other, or both, of the two acts of Dr. Ijams, set out in the charge, were the proxi-

mate cause of the collision or contributed to it as the proximate cause, was necessarily required to take into consideration all the facts and circumstances existing at the time, and to weigh and consider the same. The second assignment of error, is therefore, overruled.

The third assignment of error is based upon the action of the court in charging the jury as follows:

"If the deceased man, Dr. Ijams, when he entered Magnolia Street from Lawson Street, could have seen the approaching street car by the exercise of reasonable care, *and could have seen that it was some distance away and coming at a rapid rate of speed*, it would be an act of negligence for the deceased to attempt to cross the tracks in front of the approaching street car and if a preponderance of all the evidence shows that the deceased crossed, or attempted to cross the tracks under such circumstances, and his said act in any degree contributed to the accident, or the proximate cause thereof, then the plaintiff's suit would fail and it would be your duty to find for the defendant company."

The argument against this paragraph of the charge is predicated upon the words which we have underscored. It is that for Dr. Ijams to have been negligent in attempting to cross the track in front of the approaching street car, the street car must have been so close and running at such a rapid rate of speed that a reasonably prudent man would not have attempted to cross in front of it, and that no such qualification having been put into the charge, it was erroneous. The above-quoted paragraph of the charge taken by itself and without regard to its connection and relation to the other parts of the charge, is subject to the objection made against it, because the court did, in effect, tell the jury that if the street car was "some distance away" and coming at a "rapid speed," without saying at what distance away or at what rate of speed, Dr. Ijams was negligent in attempting to cross in front of it, and that if that negligence proximately contributed to the collision, there would be no recovery. But we do not think the jury could have failed to understand that the court meant that the distance must have been so short and the speed so great that it would have been dangerous to attempt to cross the track. The words "some distance," without doing violence to them, usually mean short distance, as shown by the definition of the word "some" in the Century Dictionary. The court, in earlier parts of the charge, had used the words "rapid speed" as denoting a speed of twenty-five to thirty-five miles per hour, and we feel confident, that taking the paragraph in question in connection with the other parts of the charge, the jury could not have been mislead by the use of the indefinite words "some distance away" and "rapid speed," and we do not think that this technical error in the above-quoted paragraph of the charge could have been so prejudical to

the plaintiff as to justify us in reversing the case. The third assignment of error is, therefore, overruled.

The fourth assignment of error is based on the action of the court in refusing to charge the jury, at the request of the plaintiff, as follows:

"If when Dr. Ijams approached the street car tracks the street car was far enough away to enable him to cross in safety if being operated at a lawful speed, the fact that the street car was operating at a dangerous, unlawful or reckless rate of speed would not prevent him or his right to continue. Unless he knew or there were conditions which he should have known, that the street car was being run at such a reckless speed as to endanger his safety. In judging whether he might safely cross he would be entitled to assume that the street car was being operated at a lawful speed unless there was something to indicate to the contrary."

This request is improperly punctuated, inartfully worded and its meaning none too clear. The theory upon which the request was made, if we understand it correctly, is that when Dr. Ijams approached the car tracks he was entitled to assume that if a car was coming it would be traveling at a reasonable rate of speed and would be under reasonable control by its motorman and that due warning would be given of its approach, and that the fact that the car was running at an excessive rate of speed did not necessarily show that Dr. Ijams was negligent in attempting to cross in front of it, unless he saw or by the exercise of ordinary care could and should have seen, that it was traveling at an excessive rate of speed. In other words, in judging whether he could safely attempt to cross the track, he was entitled to assume, in the absence of knowledge or means of knowledge to the contrary, that if a car was coming it would be traveling at a reasonable rate of speed, would be under reasonable control and that a signal of its approach would be given.

If for instance, when he reached a point on Lawson Street five or ten feet south of Magnolia Avenue, he could have seen, and did see, a distance of two hundred fifty or three hundred feet eastwardly up Magnolia Avenue and no car was in sight, he would have been entitled to assume that if a car were coming but was beyond his range of vision, it would be traveling at a reasonable rate of speed, and would be under proper control, etc. If no car had been in sight, he might, in the exercise of reasonable care, have thought that he could safely drive the distance of forty or fifty feet necessary to cross the track before a street car could travel the two hundred fifty or three hundred feet and reach the street intersection. This, because he had the right to assume that if a car was coming, it would be traveling at a reasonable rate of speed, etc.

If we understand the request correctly, it was intended to be based upon these principles which were recognized in the cases of Citizens

Rapid Transit Co. v. Segrist, 96 Tenn., 123; Saunders v. City & Suburban Ry. Co., 99 Tenn., 130.    See also Street Railroad Co. v. Howard, 102 Tenn., 483; Wilson v. Street Ry. Co., 105 Tenn., 74; Street Ry. Co. v. Norman, 108 Tenn., 324; Street Ry. Co. v. Riddick, 110 Tenn., 230.

If Dr. Ijams had lived and had testified that as he approached Magnolia Avenue he looked eastwardly up Magnolia Avenue and that no car was within his range of vision, and that his range of vision was sufficiently far up Magnolia Avenue to have enabled him to cross in safety if the car had been traveling at a reasonable rate of speed, etc., the plaintiff would have been entitled to have the court charge the jury along these lines.

Also, if Dr. Ijams had testified he saw the car two hundred fifty or three hundred feet away but had not been able to discover that it was running at an excessive rate of speed, or was not under reasonable control of its motorman, and that he thought he could cross in safety, he would have been entitled to go to the jury under proper instructions with reference to his right to assume, in the absence of knowledge or means of knowledge to the contrary, that the car was traveling at a reasonable rate of speed and under proper control, etc., and it might have been error to decline to give such instructions to the jury. But Dr. Ijams was killed and there is no such testimony in the record.

Mr. Caldwell, who was in the automobile with Dr. Ijams testified as follows:

"Q. Now, when you got around here, just before you went into this street (Magnolia Avenue), was there any street car visible to you from there? A. I could not see any. I was sitting in a natural position facing the driver and of course my back was turned a little towards that view.

"Q. You were turned sideways, was your face more towards the driver or somewhat towards the driver? A. Yes sir.

"Q. Is there an open space through here (indicating) so that you could have seen a car in here as you approached that street? A. There is a house on the corner there and a car is not visible until you get about one hundred feet of there.

"Q. Did you see or hear that car at all? A. Not until it was right on us. We were in a few feet of it, and of course naturally in running in second you know it is a little more noisy than in third, and I had my back to that view, and until we were within a few feet of it I didn't see it."

"Q. You didn't see any street car or hear any noise at all? A. No. The position I was sitting in I was at a disadvantage, in a natural position sitting two in a seat you are inclined to turn your head toward whoever you are riding with."

Again Mr. Caldwell testified:

"Q. I believe, as I understand you, when an automobile is one hundred feet south of Magnolia Avenue and then up until you reach Magnolia Avenue you can see eastward down Magnolia Avenue and could see a street car coming up there? A. Yes, if you were sitting in the right position.

"Q. Do you claim to have looked for a car when you were back here at any point 100 feet from Lawson (Magnolia Avenue), did you look then toward Chilhowee Park (east) to see if there was any car coming? A. I did not.

"Q. You did not? A. No. When I am driving I admit that is my duty. When I am driving I feel a little easy.

"Q. You were simply trusting Dr. Ijams. to drive the car and look out for other approaching vehicles? A. Yes sir.

"Q. Therefore you took no notice of the street car? A. Not especially."

From the above, and other testimony of Mr. Caldwell, it is manifest that as the automobile approached Magnolia Avenue, he was not in an advantageous position to see eastwardly along Magnolia Avenue and was not looking in that direction, and for all that appears in his testimony the street car may have been in plain view.

With respect to how Dr. Ijams was sitting and at what he was looking as they approached Magnolia Avenue, Mr. Caldwell testified as follows:

"Q. Now, as you and Dr. Ijams approached Magnolia Avenue how was he sitting driving? A. He was straight in the seat.

"Q. Was he looking forward? A. Yes.

"Q. Dr. Ijams, you say, was looking ahead of him in the direction he was driving the car? A. Yes.

"Q. And he didn't turn around and look across to see if a street car was coming there? A. Not that I recollect.

"Q. How much taller was he than you, Mr. Caldwell? A. About an inch I believe.

"Q. What is your height? A. Five feet one and one-half inches.

"Q. So that in order for him to have seen the street car coming with his automobile turned the way he had it, he would have had to look around in front of you, and you didn't see him do anything like that? A. No. I didn't pay any special attention at the time."

It is evident from this, and other testimony of Mr. Caldwell, that he does not know at what Dr. Ijams was looking, and does not know whether or not Dr. Ijams ever looked eastwardly up Magnolia Avenue in the direction from which the car came. It is also quite evident from the entire record that Dr. Ijams never saw the street car at all until it struck his automobile.

It seems to us therefore that there is no evidence in the record upon which the plaintiff can maintain his position that he was

prejudiced by the failure of the trial judge to charge the jury with respect to Dr. Ijams' right to assume that the car would be traveling at a reasonable rate of speed, would be under proper control by its motorman, and that a warning of its approach would be given. Even if the request had been couched in clear and technically correct language which the jury could easily have understood, we think it would not have constituted reversible error to decline to give it because there was no situation presented by the evidence to which it was directly and peculiarly applicable. The charge taken as a whole was fair to the plaintiff and the trial court did not err in declining to give the request to the jury. The fourth and last assignment of error is, therefore, overruled.

An order will be entered affirming the judgment of the lower court and taxing the costs of the appeal against the plaintiff below, H. P. Ijams, as principal, and Geo. H. Manning and E. C. Gothard, as sureties, on the appeal bond.

Snodgrass and Portrum, JJ., concur.